May it please the court, I believe that most of the issues that have been previously raised have been briefed sufficiently so I will tell the court that I'm going to focus my argument on the question of the sentencing in this matter and whether the defendant, whether the appellant was given a term of a sentence that was actually a sentence beyond the statutory maximum in this case. When my client was given a single term of supervised release at the a term, it's the appellant's belief that it prevented the district court from imposing consecutive terms of revocation and supervised release at subsequent proceedings irrespective of whether the original judgment in 2005 imposed multiple or single terms. Do you have any cases that say the rule of lenity applies to construing a judge's decision as opposed to a statute or a guideline? Your Honor, I believe that the rule of lenity applies in the sentencing context also under United States v. Nass, N-A-A-S, it's a Fifth Circuit Court of Appeals case, and United States v. Surface, S-E-R-F-A-S-S, also a Fifth Circuit case. Right, but I'm asking a little more specific question which is, you're asking us to apply the rule of lenity to what a judge did or to the phrase a term, if you will, as opposed to a statute, a guideline, a regulation, something of that nature. And I'm just asking, you know, I've memorized all the cases in the world except those two you just cited. Do they address that? I believe they address the sentencing context also. I believe that they would address that issue also with respect to sentencing. Okay. We'll take another look at that. You're focusing on the April 2010 sentencing? That's your focus? That would be the focus for the rest of the argument with respect to the subsequent sentencings that were multiple sentencing, yes, sir. Now, I didn't see any sentencing hearing transcript. Is there one? Yes, there is. I thought that that was part of the record. I know the sentencing transcript was transcribed and sent to the Fifth Circuit. For the 2010 sentencing? Yes, it was. Okay. Is there any mention there about which count he's imposing, the supervised release terminal? No, Your Honor, there's not any mention of which count. I'm sorry, where in the record is that? The 2010, the original sentencing hearing transcript, where in our record of case 18-60021 is that? Well, what's the site? I'm not sure exactly where it is. It's in the oral argument. I know it has been transcribed and sent to the Fifth Circuit. If it's not actually part of the record, I will ask that it be made part of the record. Your whole argument though depends on your construction of the judge's sentence that's giving the 55-month term of supervised release on count two. That's correct. And in the order itself, the court reflects that it is giving a term. Isn't that form language? Well, it is form language from the standpoint that it's been called boilerplate language. However, the Third, Seventh, and Eleventh Circuits have all dealt with the same issue of something being, quote, boilerplate language, and it's still being construed as a term unless the court specifically set out multiple terms. And because the other circuits have ruled that a term means a term, they have all ruled in favor of appellants under these same issues. Okay. But they didn't have the added wrinkle that you have, which is y'all didn't contest this at least properly, or successfully for that matter, in the 2013 appeals. How can you get past that now that you're in the 2017 world? Well, if you look to Estridge, Your Honor, I would submit that the same facts happened there as here. In Estridge, there were, I believe, three subsequent revocations, and only on the last revocation was it actually addressed by anybody. That was an issue that kind of was just not caught by anyone, the appellants, the governments, or the court. And even at that point where they were, I think, on the third revocation, when the court caught it, it acted upon it because it considered it a manifest injustice to allow a sentence that exceeded a statutory maximum based on the language of a term, and then subsequent multiple terms, and it acted to correct it. And I would submit that the court could follow the same logic of Estridge and the other cases in the other two circuits that have followed that premise and avoid what would amount to a circuit split if it acted otherwise. I think the court in this circuit would normally try to avoid unnecessary circuit splits, and I think to act otherwise in this case would create a circuit split. That's why we would ask that the court follow the third, seventh, and eleventh circuits also and Estridge specifically. Let me just talk to you about your premise that the 55-month supervised release sentence in 2010 was on count two. Now, basically, your main argument is because that was the maximum sentence allowable for count two. Is that right? Yes, Judge Davis, the maximum allowed for supervised release under count two was a maximum of 60 months. The minimum allowed under count eight was 60 months up to life, and the lower court in 2010 gave the defendant at the time a five-month sentence, and because of the five-month sentence, then gave 55 months for supervised release, which was not even the amount that would have been required as a statutory minimum under count eight. So I think it is clear that what the judge was going on was count two. Statutory minimum for count eight would have been how much? Statutory minimum for count eight would have been 60 months, and the maximum would have been life. And because the judge did not say which count he was going on, I do submit that the rule of lenity would apply here, because if there is a question about which county was going on, I think that with it being silent on it, that silence and ambiguity about which count was actually being applied should work to the benefit of the appellant, because to do otherwise would give him a higher sentence than he would have gotten under count two. We have to assume, though, that if he did give that sentence on count two, he was given above the statutory maximum. Can we assume he wanted to do that? I am not sure I follow the court, but if I do understand the court's question, it seems to me clear that what he was doing was following the limitation of count two, because he had a maximum 60 months supervised release that he could give under count two, and in light of the five months imprisonment that he gave him, he reduced that supervised release by those five months and gave him a 55-month sentence of supervised release. Was that within the statutory maximum? I'm sorry? Was that within the statutory maximum? Sentence on that revocation? Well, yes, it was under count two. It was not within the statutory minimum of count eight. But in 2013, when he gave 19 months, that exceeded the statutory maximum? When he gave the 19 months for . . . I think that, frankly, gave the remaining amount left that he was able to give under count two . . . Within a three-year maximum under the statute? There was three years of imprisonment that he could be given. He could be given 36 months. So when he gave the 19-month sentence in 2013, it was taking into consideration the amount of time he'd already been given. Yeah, I thought the statute limited him to three years' sentence on revocation per count two on this charge. Is that not right? That's correct. For imprisonment. Yeah, prison. For imprisonment. And so how much had he given him through 2010? In 2010, he gave him five months. But in 2005, he'd already given him 60 months, hadn't he? In 2005, he'd already given him . . . Okay, 10 is the first time he revoked. That's right. That's correct. So he gave him five months. That's correct. Then in 2013, he gave him 36 months, huh? That's correct. That exceeds the statutory maximum. Yeah, we contend that it exceeds the statutory maximum because he also gave him two 36-month sentences. He reverted back to count eight, which the appellant contends had already been revoked and no longer existed, was no longer even in existence. And in 2013, he gave him two 36-month sentences to run consecutively. And then in 2017, again, did the same thing. Okay, I got you. Now, there was no objection made in 2018 either, was there, to the supervised release sentence? There was objection by the appellant. Yeah. The appellant argued at his 2017 sentencing before the lower court that a further additional 36-month sentence was improper because that count no longer existed. So he did raise the issue. It may not have been . . . He didn't argue that it exceeded the statutory maximum. I think he did argue that that exceeded the statutory maximum at his sentencing. I think that was argued. It may not have been perfectly argued and it may not have been framed really in the context of, I guess, how we've threshed out the arguments further before the Fifth Circuit, but he did raise the issue. And because he raised the issue, we believe that the standard for this court to review it should be de novo because he raised the issue of an illegal sentence. I don't know how specific he raised it, doesn't it? Well, I guess . . . He raised the issue of there was this one term and it became two terms and all. This convoluted thing we're dealing with now was not raised in the trial court. It was only at sentencing . . . No, I mean at all. I think it was raised somewhere. When you're back at your desk, if you could look that up and on rebuttal, give us that site so we can look at it, the record site of where he raises the one versus two term issue that we're focusing on from 2010 to 2013 before this appeal, if you can find that for us. I think I can find in the brief where we cited . . . That's great. Give us the record site. I think we can find that. Okay. So . . . Sum it up for us now, would you? I'm sorry? Sum up what your argument is. What we're arguing, Your Honor, is that because the subsequent revocation hearings used a further reading of Count 8 to say it could give consecutive sentences, when Count 8 no longer even existed after Judge Bramlett's 2010 revocation hearing, renders a situation where the appellant is actually serving sentences and not only is present sentences, but is supervised release, both of those are beyond the statutory maximum. Okay. You say time for a vote. That's our argument. Okay. Thank you, Counselor. Appreciate it. Thank you, Your Honor. All right. Mr. Hurst? Why don't you go right to that argument? He said no supervised release term was imposed in 2010, so it wasn't available to the judge in 2017 to vote. What's your answer to that? Your Honor, if you look on the second page of our supplemental letter, we lay out the chart for you, which we think is applicable here. The defense in its first appellant brief argues that the 2010 revocation sentence only applied to Count 2. But then he came back in his supplemental letter and says, no, no, no, the statute says the judge is required to revoke both counts, and the statute does. Revoke but no sentence. Well, the statute also says it's required to imprison the individual for revocations, which we would argue applies to both counts. And so in this case, you asked if the 2010 transcript had been included in the record. It is not. The transcript of the 2010 hearing is not in the record. It's incumbent upon the appellant to put it there. It's not there. We do not know what Judge Bramlett said. So that would counter an argument that we have to construe it in his favor because if you have a duty to provide a record and you don't, then we construe it against you. That's correct, Your Honor. So the government would argue that because what the court was saying a while ago, that the minimum term of supervised release under count 8 was 5 years, 60 months. So this argument that it only applies to count 2 cannot be accurate because that same 5 months of imprisonment with 55 months of supervised release adds up to be the 60 months. So we would argue a natural reading of that applies to both counts. Now, the flip side of that argument is... And would there be anything circuit-split-esque about construing the original 2010 as being under count 8? In other words, would we run afoul of Eskridge et al. by ruling that? I'm not... I don't believe so, Your Honor, because the Eskridge argument is exactly what Your Honor asked previously, which is the word a term is boilerplate. Just like the word a total term is boilerplate as relating to imprisonment under the judgment of conviction. So I would not read too much into that a term as being holding in this matter. What I will tell you is the defendant argues under United States v. Wing. It's a Ninth Circuit case talking about the definition of revocation. Now, the problem with Wing is... Wing addressed whether a district court lacked jurisdiction to sentence an individual on a second revocation for a violation of a condition of his first revocation. The problem with Wing is it doesn't follow Supreme Court law. Wing talks about United States v. Johnson, which addressed this issue. In United States v. Johnson, the Supreme Court said the term revoke does not have an ordinary meaning of revocation such that it cancels or annuls. Congress specifically said in 3583E1 terminate revocation. Terminate means terminate. But in E3, Congress says revoke. And under E3, it says it can serve imprisonment during all or part of a term of supervised release. So you can't revoke something the Supreme Court says but then serve imprisonment under that same supervised release. So the Supreme Court has said that revocation does not mean termination. And Congress could have changed it since that case was decided. But that's not what Congress did. That case is still in effect. The Sixth Circuit and the Supreme Court of Wisconsin is still in effect. And the revocation does not mean that a term of supervised release goes away. Let me ask you this. Is it necessarily true that if we were to rule for the government on this sentencing issue, then we are creating a circuit split? I don't believe it is true, Your Honor. Tell me why not. The issue of a term is not even in play here. As I stated earlier, it's boilerplate. It's not something that I think creates a circuit split because Let me just ask you one thing on that. Yes, Your Honor. I've looked at the two judgments and on the first judgment the court said upon release from imprisonment the defendant will be on supervised release for a term of five years as to each count of count two and eight to run concurrently. So he said what he meant there. And then in the 2010 sentence he said upon release from imprisonment the defendant shall be on supervised release for a term of 55 months. I mean he knew how to do it concurrently and he didn't do it in 2010. He did, Your Honor. You're correct. But I would also agree with the defendant when he said in his supplemental letter that a judge is tasked with knowing the law. And the law said shall revoke a supervised release, which means both counts. And so whether he said it in the judgment of conviction or not, we are to presume a district court judge follows the law. In this case he revoked both counts and I would argue because that same law says he's required to impose a term of imprisonment because it involved controlled substances. That imprisonment and supervised release followed both counts, even though he didn't say it specifically. Well, I mean, if the judge is required to do something but doesn't do it, where are we left? I mean, that's what we apparently have here. He didn't explicitly impose a term of sentence on the revocation of count 8. Right. And Your Honor, I would also say even if he didn't do that, the other argument back to Johnson is if you go with that count 2 was the only one that was revoked and sentenced, under Johnson count 8 supervised release, the original 60 months, continues after the 5 months imprisonment, that continues in effect count 8. And other courts have upheld that. As I mentioned in the 6th Circuit and the 4th Circuit, they have said that supervised release, even after revocation, continues. And so I think you can have it this way where the judge revoked and sentenced on both under the statute, even though he didn't clearly do it in the judgment of conviction, or you can have it under the Supreme Court's precedent in U.S. v. Johnson, where it said revocation does not mean supervised release goes away. Your Honor, the other question that the court brought up to the parties was whether because the defendant did not raise this in 2013, whether he was stopped from raising it now, and we believe that's absolutely true. What about his side of Eskridge where he says they didn't find that? Well, I thought he cited Eskridge for the proposition of the sprays a term. I didn't remember Eskridge addressing directly the issue we're talking about with the 2013, but I'll have to go back and look at it again. I'm just asking you, would we be creating a circuit split by finding that failure to raise the issue in 2013 forecloses raising it in 2017? No, Your Honor. I think the case law in the Fifth Circuit is clear. I will give you some sites, Your Honor, that you asked the defendant. The defendant did not object to nor challenge his 2013 revocation sentence as illegal. That site is Record of Appeal 2887. He did not appeal that issue in his 2013 appeal before this court. As you, the court know, we have a decision from the Fifth Circuit in the United States versus Atwood, and we also have the actual brief and reply brief of the appellant, which is cited in our brief in his own West Law. He didn't challenge this issue in his 2013 2255, which is at Record of Appeal 583 and 584. And the first time that we found that he brought this issue up was in a pro se 2255 motion he filed in May of 2016, three years later. The defendant says, even though he didn't appeal the 2010 revocation, well, he didn't appeal the 2013 revocation, he can go back to the 05 original sentence. Excuse me, he can go back to the 2010. He can just, in other words, he's not relying on anything in the 2013 revocation. Well, Your Honor, I think that this court has found in United States versus Stiefel, S-T-I-E-F-E-L, that when the defendant attacks his current term of imprisonment by asking the court to review the sentence that he originally failed to appeal, that argument is foreclosed. 2017 relates back to the I mean, it all gloms together, obviously, because we're under the same person, but the 2017 came about as a revocation of the 2013, and so the 2013 is the question, in my view, and so having not raised it in 2013 that the, because the 2013's illegal under his or improper under his argument, but he didn't raise that on appeal. That's correct, Your Honor. I don't understand why that's not weighed. And we, the court, in fact, is weighed either under res judicata or collateral estoppel. Under either message, under either case law that you look at, because he did not raise it, he effectively waived it. What is your response to this issue of applying the rule of lenity to this 2010 transcript that we don't have and to the judgment that we do have? You read my mind, Your Honor. I was about to go back and answer that question. In the case law that we found, you are correct, the rule of lenity that we see in the statutes, and even the cases that Mr. Milner references, that applies to the statutes or sentencing guidelines. I have not seen a case, and I'm not saying there's not one, but I haven't seen a case where that applies to a judge's decision. So, in this case, we don't think the rule of lenity would apply in this case. I mean, you could take that kind of to a stream of construing our opinions under the rule of lenity and construing, I mean, everything we say in oral argument under the rule of, I mean, it would become a little bit ridiculous in my view if we applied the rule of lenity to every word out in the world, as opposed to its origin, which is a statutory construction or textual construction of rules, guidelines, regulations, statutes, treaties, I don't know, whatever. Things like that. That's correct, Your Honor, and the government would agree with that. Let me ask you about whether the defendant protected his record in the 2017 hearing. Did he make an appropriate objection, and what's our standard of review of that? We believe the standard of view in this case is plainly on the Wingate sentence. Right, and just to be clear, the Wingate sentence was both 2013 and 2017, but 2017, to Judge Haynes' point, we think that relates back to 2013, because 2013 involves the exact same issue that he now is before you complaining about and never raised in 2013. Did he make the one-two point in the trial court in 2017, or did he simply just say this exceeds the statutory maximum? I don't have that in front of me, Your Honor. What I have is that he filed a motion in March of 2019 to amend his certificate of appealability, to expand it, to include this specific issue. No, I'm not talking about his 2255 on 2013. I'm talking about when he was sentenced in 2017. Did he make this argument that because 2010 was a one, then 2013 couldn't have been a two, and now it cannot be a two? I'm sorry, Your Honor. I don't have that in front of me. I don't know. Well, presumably he's going to give me the record side on that, so we'll all have it. Your Honors, if there are no other questions, I'll allow the rest of our brief, and we would ask, I would I want to clarify, and I mean, look, I've been part of cases that are circuit splits, and I have no problem with doing a circuit split, but I like to know that I'm doing it, so I just want to be clear on this sentencing point. Do you agree with your counsel opposite that if we were to rule that the 2013, by failing to raise these arguments in addressing the 2013 sentencing, he has therefore waived or is stopped from asserting them on the 2017 sentencing, that that ruling would create a circuit split? I don't think that ruling would create a circuit split. What I thought Mr. Milner was arguing that the Eskridge case and the other cases that define the words a term would create a circuit split, and that in fact as boilerplate that doesn't matter, then that would create the circuit split, but the estoppel argument, the waiver argument is not. That's my reading of it, Your Honor. I mean, I'm still maybe I'm just missing something, but the defendant is saying that really the focus here is on the 2010 sentence, and that there's no prohibition about him going back to 2010 to demonstrate that the sentence on revocation was on count two. So, I mean, his whole point is in 2010 the sentence was on count two. Now, I know you disagree with that, but why can't he go back to 2010 without regard to what happened in 2013 and the failure to appeal that? Well, the only reason this comes, the only reason 2010 comes up is because of the revocation in sentencing in 2013, and that's what he did not appeal, but is now before you arguing both the 2013 and the 2017 sentences, two sentences were illegal because as you said, Judge, the 2010, in his view, only applies to count two. And so what we have here is almost a decade of this defendant trying to go back when he never appealed this, never objected to it until right now, and we believe he's either collaterally stopped or prevented by res judicata from bringing it up now. All right. Your Honor, we would just ask that the district court's rulings on recusal, on revocation, and his sentencing be affirmed. Thank you. Your Honor, I spent my time looking for the site in our briefing, and of course, I know it's there, but I can't find it under these circumstances of trying to hurriedly find it and trying to listen to the other side also. I would ask the court to allow me to find it and submit it to the court. I believe it's there, Your Honor. Okay. It's either in the original brief, the reply brief, or the supplemental letters. Now what I would in rebuttal, the government cites Johnson for the proposition that the collateral estoppel I'm sorry, that the definition of revoke is somehow different from the common ordinary meaning of revoke. I would point out, though, that in Johnson, it was only abrogating a portion of 3583 with respect to something different from what my client was on. My client was being revoked under 3583G with respect to having used a controlled substance. So Johnson only abrogated the common meaning of revoke to a small part of it. It didn't abrogate the common meaning of revoke otherwise. I would submit that revoke means annulled or rescinded or canceled. With respect to the other arguments that the government is making, I would point out, too, that the government has never argued in its briefs anywhere that Judge Bramlett said anything different or diametrically opposed to what he put in his order. Matter of fact, the government's own brief pretty much concedes that he imposed a single revocation when they, on their own brief at page 43, argued that Judge Wingate could impose terms of imprisonment to run consecutively, but this is the important language, without regard to Judge Bramlett's evidently having imposed a single revocation sentence. That's their position in their appellee's brief. Is it your burden to bring us the transcript of 2010 if you're relying on that? I mean, at the end of the day, we have to get this right, whether y'all make a... It is, Your Honor. Whether y'all understand what the judge said or not, we're supposed to do that, but we don't have the 2010 transcript. You think we do, but I haven't seen it, Judge. Davis hasn't seen it. Your opponent hasn't seen it, so... It is, and I thought it had been sent from the lower court by transcription to the 5th Circuit, and I can easily ask that it be made a part of the record, which I will do so if the court will allow me to do it after oral argument. You can ask. We'll have to consider whether it's late in the game. But I would point out that that's never been contested, that there's never been any argument that what Judge Bramlett actually said was any different than what he put in his order, and that's been conceded. Well, it might be because we don't have the transcript, and technically what he said at sentencing would govern, right? Because that's the oral pronouncement. Well, if there's any contention that what he said was different from what was in his order, and I haven't seen that as an argument by the government. That's not been addressed at all or argued. I ask you to give me your position on the effect of not appealing the 2013 revocation. On the issue of being beyond the statutory maximum? Your Honor, I think that the government's arguments that the appellant is collaterally stopped from arguing that is misplaced. The case law says that the issue of whether the court imposes collateral stop or res judicata is not jurisdictional. It's discretionary. As the court did in Eskridge and Starnes and Dillon and that line of cases, even with that being the case of not having been previously raised, they found that collateral stop would not be imposed because A, it was discretionary and they were not going to impose it, and B, to impose it would create a manifest injustice to do so. The court instead corrected an injustice and corrected a sentence, sentences that were beyond the statutory maximum. I don't think that that is even necessarily required. It's not some issue that has to be imposed. The other circuits have not imposed it when they were dealing with an issue of a sentence. When a sentence is beyond the statutory maximum, it's an illegal sentence. The courts have recognized that and addressed it to prevent a manifest injustice. I'm sorry. Thank you, Your Honor. We appreciate the arguments and Mr. Milner, we appreciate you accepting the court appointment and we appreciate both sides being here and presenting their arguments. Thank you, Your Honor. It's been a pleasure.